IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | )   2:11-cr-49 |
| v. | ) |
| | ) |
| JOSEPH E. GUMP, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently pending before the Court is DEFENDANT'S MOTION TO EXCLUDE EVIDENCE GOVERNMENT INTENDS TO INTRODUCE AT TRIAL WITH CITATION TO AUTHORITY (Doc. No. 64) filed by Defendant Joseph E. Gump ("Defendant" or "Gump"); the RESPONSE (Doc. No. 65) filed by the government; and the REPLY filed by Defendant (Doc. No. 69). The Motion has been fully briefed is now ripe for disposition.[1]

Defendant seeks authorization to exclude four categories of evidence that he believes the government will seek to admit at trial.[2] More specifically, Defendant requests that the Court exclude (1) the use of the term "tax protester" or any similar designation by the government and its witnesses at trial because Congress has forbade the Internal Revenue Service ("IRS") from using that term; (2) any evidence acquired under any administrative summons issued after October 16, 2006; (3) all statements made by Defendant during his telephonic conversation with Special Agent David F. Insana because those statements were allegedly elicited in violation of

---
1. The parties are reminded that "[A] ruling [in limine] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce v. United States*, 469 U.S 38, 41 (1984). Thus, an order on a motion in limine is essentially an advisory opinion, "merely speculative in effect." *Id.*
2. The Court notes for the record that three of the four requests are essentially motions to suppress evidence under Fed. R. Crim. P. 12. By Order of Court dated February 1, 2012, all pre-trial motions were due on April 2, 2012. The Court also recognizes that Defendant has undergone numerous changes of counsel and that his current Federal Public Defender was not counsel of record at that time. Despite these errors, the Court will nevertheless address the substance of Defendant's motion and the opposition thereto.

his Sixth Amendment right to counsel; and (4) any post-arrest statements made by Defendant to Special Agent Insana because there was supposedly no valid waiver of his *Miranda* rights. The Court will address each request seriatim.

### A. "Tax Protestor" Request

Defendant first requests that this Court prohibit the use of the term "tax protestor" or any similar designation at his trial. Defendant argues that Congress found this term so stigmatizing that it passed the Internal Revenue Service Restructuring Act (the "Act") in 1998 to ban officers and employees of the IRS from designating taxpayers as illegal tax protestors and that the prohibition in the Act indicates that the term is unfairly prejudicial under FED. R. EVID. 403. The Act states, in relevant part,

> [t]he officers and employees of the Internal Revenue Service—(1) shall not designate taxpayers as illegal tax protesters (or any similar designation); and (2) in the case of any such designation made on or before the date of the enactment of this Act—(A) shall remove such designation from the individual master file; and (B) shall disregard any such designation not located in the individual master file.

Internal Revenue Service Restructuring Act, Pub. L. 105-206, § 3707, 112 Stat 685 (1998); *see also* S. REP. NO. 105-174, at 105 (1988) (describing that the reason for the change in the Act was that "[t]he Committee is concerned that taxpayers may be stigmatized by a designation as an 'illegal tax protestor'"). Defendant claims that "[i]t would pervert the intent of [this Section] to permit any agent or employee of the Service to use a term in a public criminal trial that he or she cannot use in the Service's internal administration." While Defendant cites to both the Public Law and the Senate Committee on Finance Report, he offers no case law in support of his request.

In response, the government highlights that the Act specifies employees of the IRS, but does not include the Department of Justice and thus the preclusions therein do not apply at trial.

2

Nonetheless, the government does agree that "in order to comply with § 3707 [it] will not elicit from any IRS employee trial testimony characterizing defendant as a 'tax protestor,' 'illegal' or otherwise."

Defendant's reply brief concedes that § 3707 does not prohibit the employees and agents of the Department of Justice from using those monikers in its internal administration of executing federal criminal laws. Defendant does, however, repeat his argument that that Rule 403 "counsels that the Court prohibit both the government and its witnesses from using the term because Congress's finding that the term is inherently stigmatizing is not meaningfully different from a finding that the term is unfairly prejudicial." The Court cannot agree.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Courts, applying that balancing test to the terminology at issue, have reached mixed results. *Compare United States v. Folkers*, CRIM A 04-20124-KHV, 2008 WL 956833 (D. Kan. Apr. 4, 2008) (agreeing with the government that references to defendant as a "tax protestor" or "as his own sovereign" were not "inflammatory per se, and it [found] no reason to impose a blanket ban on their use before trial") *with United States v. Hunziker*, 88 CR 20011, 1989 WL 197404 (N.D. Ill. Oct. 12, 1989) (prohibiting any reference to defendant's association with so-called "tax protestors" on Rule 403 grounds because it had the "potential of allowing the defendant to be convicted on the basis of association or membership rather than conduct").

Here, the Court finds and rules that the potential use of the term "tax protestor" or of similar designations by government witnesses in this case is not so unfairly prejudicial as to

3

require total exclusion at this time. The Act, which contains no reference to the Department of Justice, does not prohibit the Assistant United States Attorney's use of the term "tax protestor." Likewise, if Defendant's actions align with the characteristics of the "tax protestor" description, it may well be relevant and probative of willfulness. The government has nonetheless already agreed to not elicit trial testimony from any IRS employee which would label Defendant with any of the terms at issue.

Should the use of such references arise and raise particular concerns in the course of trial, Defendant may reassert his objections as appropriate and the Court will rule upon same accordingly. Thus, Defendant's motion in which he seeks to prohibit the use of the term "tax protestor" or any similar designation by the government at his trial is **DENIED**.

### B. Administrative Summons Request

Defendant next seeks to bar the introduction of any evidence against him that the government acquired through the summons power of the IRS under 26 U.S.C. § 7602 unless it can show that it complied with the statute. The government raises multiple objections to this challenge, and Defendant ultimately concedes his request for exclusion in his reply brief. Therefore, without objection, Defendant's request for exclusion of any evidence obtained through administrative summonses prior to April 15, 2008 is **DENIED**.

### C. Sixth Amendment Right to Counsel Request

Defendant also claims a Sixth Amendment violation and requests that this Court exclude statements that he made to Special Agent David Insana during a March 1, 2011 telephonic conversation that Defendant initiated because he had previously invoked his right to counsel on two occasion in September 2010. The government disputes Defendant's theory in all respects.

4

As an initial matter, the Court notes that the parties are not disputing the factual background from which this issue arises. That is, neither the Defendant nor the government challenges the accuracy of any of the factual recitations contained within any of the memoranda that Defendant attached as exhibits to his Motion and upon which each side relies in their respective briefs on this issue. The Court highlights this point because Defendant's request is essentially in the nature of a motion to suppress evidence, and a hearing on this alleged Sixth Amendment violation has not been requested or held. Nonetheless, the record appears uncontradicted with regard to this challenge, and the Court will proceed to the merits of Defendant's Motion.

On October 18, 2006, Charles A. Jenkins, Special Agent in Charge for the Pittsburgh Field Office of the IRS—Criminal Investigation, sent Defendant a letter to inform him that an investigation into his tax activities had recently been initiated by the IRS. *See* Doc. No. 64-2. The letter stated that the investigation was criminal in nature, highlighted the specific statutes to which the investigation relate, 26 U.S.C. §§ 7201, 7203 (Tax Evasion and Failure to File), and informed Defendant of his rights, including his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel.[3]

Thereafter, according to a Memorandum of Contact prepared by Special Agent Insana, he and Special Agent Robert Kickbush went to Defendant's residence on September 20, 2010 and

---

3. The letter states, in relevant part, as follows:
> As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses. In connection with my investigation of your tax liability, I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advice you that anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of any attorney before responding. Do you understand these rights?

(Doc. No. 64-2).

5

knocked on his front door which Defendant answered. Special Agent Insana identified himself by name as being with IRS Criminal Investigation, showed Defendant his badge and picture credential, and asked if he would be willing to answer a few questions. Defendant denied the request, and Special Agent Insana passed along his business card to Defendant and asked him if he was represented by an attorney. Defendant responded "Jim Allen." Special Agent Insana proceeded to ask for Allen's telephone number and Defendant stated that he would call Special Agent Insana, held up his business card, and closed his front door. By Certified Mail, Defendant contacted Special Agent Insana the next day on September 21, 2010. Defendant's letter states "I understand that you wish to speak to me. I will correspond to all written items as quickly as possible. As I explained my 'counsel of choice' is John Allen. As I told you yesterday I would give you contact information, this is the address, P.O. Box 2911, Zanesville, OH. I will await your written response." (Doc. No. 64-5).

On March 1, 2011, Special Agent Insana again prepared a Memorandum of Telephone Contact after Defendant contacted him that same day. At approximately 3:20 p.m., Defendant attempted to contact Special Agent Insana by telephone and left a message. Special Agent Insana returned the call several minutes later when Defendant offered various statements. The Memorandum describes those conversations as follows:

> 1. He [Defendant] got the "thing in the mail and wanted to know what it was going to take to make this go away. He said that he is 59 years old and has a 10th grade eduction; and currently have [*sic*] different priorities in his life. He explained tht he needs to take care of his "companion" who is very ill and under a doctor's care; and that her condition will worsen when she finds out about this matter. Someone told him that he would have to pay $30,000 (to the IRS); and he is willing to pay his "tribute." Even though he does not have this money, he would be willing to put the amount on his credit card.
>
> 2. I [Special Agent Insana] explained to Gump that the matter is now in the criminal justice system and just paying his taxes will not make the matter go

> away. I asked if he has a criminal defense attorney, to which he replied that he contacted one but the attorney wanted $20,000 up front, money he does not have. I told him the most important thing now is to make sure he appears in court on March 15; otherwise, the judge will issue a bench warrant for his arrest. Gump replied that he is planning to appear on that date; but the letter says that both he and his attorney should be there, and he does not have an attorney. I explained that the government will provide a public defender to someone who cannot afford their own attorney; but the most important thing now is for him to appear on that date with or without any attorney. I added that if he has any questions, he can call [the] Assistant US Attorney . . . who is handling this matter. Gump thanked me and said he would call [the] AUSA [ ] tomorrow.

(Doc. No. 64-6). Those statements, memorialized in Special Agent Insana's March 1, 2011 letter, are that which Defendant now seeks to exclude from evidence at trial.

In sum, Defendant contends (1) that he invoked his right to counsel when the Special Agents visited his residence on September 20, 2010 and when he responded by letter the following day; (2) that although he initiated contact with Special Agent Insana on March 1, 2011 and left a message in which he asked for the telephone call to be returned, Special Agent Insana should not have called him back to interview him, knowing that he had invoked his rights under the Sixth Amendment; (3) that by returning his call, Special Agent Insana deliberately elicited incriminating statements from an accused he believed to be represented by counsel; and (4) that the remedy for such a violation is the exclusion of the statements at trial.

The government disputes all of those contentions on three grounds. First, the government argues that when Special Agent Insana returned Defendant's phone message, the latter's Sixth Amendment right to counsel had not yet accrued because there had not yet been an initial appearance on any charge. Second, the government submits that the September 2010 references to Defendant's attorney did not bar Special Agent Insana from returning his phone call five months later. Third, the government asserts that Defendant's reference to John Allen as his

7

"counsel of choice" should not be considered as a Sixth Amendment invocation because Allen is not an attorney, a fact that surfaced upon research that Special Agent Insana's conducted after he received the September 21, 2010 letter. The Court agrees with the government with regard to the alleged Sixth Amendment violation.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. AMEND. VI. In particular, the Sixth Amendment guarantees the right to have counsel present at all critical stages of the criminal proceedings. *Montejo v. Louisiana*, 129 S.Ct. 2079, 2085 (2009). "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012) (citations omitted).

Here, the criminal proceedings had not yet reached a critical stage and therefore Defendant's right to counsel had not yet attached when Special Agent Insana returned Defendant's March 1, 2011 phone call that same day. At that time, Defendant had only been indicted the month before and his arraignment was not yet scheduled until March 15, 2011. In fact, the "thing in the mail" to which Defendant referenced in his March 1, 2011 phone call was the summons for his initial appearance. The initial appearance, and not the indictment alone, qualifies as a critical stage of the criminal proceeding at which time the right to counsel accrues.

Even assuming that there was a proper invocation of Defendant's Sixth Amendment right at some point prior to the March 1, 2011 phone call, which the Court has ruled that there was not, both of Defendant's references to his attorney "Jim Allen" on September 20, 2011 and "John Allen" on September 21, 2011 does not change this analysis, as the Supreme Court invalidated the rule of *Michigan v. Jackson*, 475 U.S. 625, 626 (1986) in *Montejo*. *See Montejo*, 129 S. Ct. 2085-88.

The Rule of *Michigan v. Jackson* once required the exclusion of statements made by a suspect during a counselless interview initiated by police after the suspect invoked his Sixth Amendment right to counsel at an arraignment or similar proceeding. *See id.* The underlying justification for the that rule was the need to prevent police from "badgering" represented suspects to relinquish their right to have counsel present during questioning. *Id.* at 2085.

However, in *Montejo*, the Supreme Court concluded that *Jackson* merely added a layer of complexity to analyzing the admissibility of confessions while providing only redundant protections. *Id.* As the Court explained:

> Under the *Miranda-Edwards-Minnick* line of cases (which is not in doubt), a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings. At that point, not only must the immediate contact end, but "badgering" by later requests is prohibited. If that regime suffices to protect the integrity of a suspect's voluntary choice not to speak outside his lawyer's presence before his arraignment, it is hard to see why it would not also suffice to protect that same choice after arraignment, when Sixth Amendment rights have attached. And if so, then *Jackson* is simply superfluous.

*Id.* at 2090 (internal quotation marks and citation omitted).

Based on the Supreme Court's recent jurisprudence, Special Agent Insana's return of Defendant's phone call under the circumstances described above does not warrant exclusion. Should Defendant have wished not to speak with Special Agent Insana without counsel present, he could have either made that information apparent or not initiated contact in the first place. Indeed, Defendant himself admitted that he did not have and could not afford to have criminal defense counsel in that very phone call.

Based on the foregoing, Defendant's Motion to Exclude from introduction at trial all statements made by Gump during the March 1, 2011 phone call with Special Agent Insana is **DENIED**.

## D. *Miranda* Violation Request

Defendant's finally requests that this Court exclude from introduction into evidence at trial any post-arrest statements that he made to Special Agent Insana because there was no valid waiver of his *Miranda* rights. In support, Defendant argues that the alleged statements described in the Memorandum of Arrest (Doc. No. 64-7) prepared by Special Agent Insana are not admissible because that report does not reveal whether he voluntarily, knowingly, and intelligently waived his rights. Defendant also maintains that the surrounding circumstances of his arrest are inconsistent with a voluntary waiver of his right to remain silent because he was arrested between 3:00 a.m. and 4:00 a.m. after completing his work shift, had been awake for approximately twenty-two (22) hours at the time of his arrest, and remained in Special Agent Insana's custody until after 9:00 a.m.

In response, the government contends that the Memorandum of Arrest demonstrates that a *Miranda* violation did not occur because it shows (1) that Defendant understood his rights; and (2) that there was no interrogation of Defendant, as Special Agent Insana merely responded to Defendant's questions. The government also offers the theory that assuming arguendo that a *Miranda* interrogation occurred, an express waiver of Defendant's rights was not necessary.

According to the Memorandum of Arrest, six special agents approached Defendant in the parking lot of his employment location at approximately 3:50 a.m. on April 6, 2011. Special Agent Insana identified himself and informed Defendant that he had a warrant for his arrest. After the Special Agents searched Defendant and his belongings, they placed him in the back seat of Special Agent Thomas Czerski's vehicle to transport him to the Avon Lake Police Department. While Defendant was handcuffed in the back, Special Agent Insana read Defendant the following:

> Before we ask you any questions, it is my duty to advise you of your rights.
> - You have the right to remain silent.
> - Anything you say can be used against you in court, or other proceedings.
> - You have the right to consult an attorney before making any statement or answering any question, and you may have an attorney present with you during questioning.
> - You may have an attorney appointed by the U.S. Magistrate or the court to represent you if you cannot afford or otherwise obtain one.
> - If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer. HOWEVER…
> - You may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire.

(Doc. 64-7 at 5). After Defendant requested that the Special Agent re-read the last paragraph to him, Defendant allegedly said that he understood his rights. Moreover, Defendant allegedly asked if any statements he made could be used against him to which Special Agent Insana responded in the affirmative.

The Memorandum Arrest outlines the many statements that Defendant is alleged to have made after Special Agent Insana informed him of his rights, both during the transport and while being processed at Avon lake. To summarize, Defendant allegedly inquired into what the charges were against him; explained letters that the IRS sent him regarding a 2009 tax return; spoke about his meetings with and study of Irwin Schiff; and noted various conversations that he had with the probation office.

It is black letter law that *Miranda* warnings are required only when a suspect is both in custody and subject to interrogation. *Alston v. Redman*, 34 F.3d 1237, 1246-47 (3d Cir. 1994) (*citing Rhode Island v. Innis,* 446 U.S. 291, 300 (1980)). Interrogation means "express questioning or its functional equivalent . . . any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely

to elicit an incriminating response from the suspect." *United States v. Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006) (quoting *Innis*, 446 U.S. at 300-01).

The Court finds that based upon the factual record, Defendant was not a subject of custodial interrogation at the time he made the referenced statements. Although Defendant was clearly in custody, as he already had been placed in handcuffs when he made the unsolicited statements to the IRS Special Agents, he volunteered these statements without any prompting by any federal agents or police officers. Neither the six Special Agents nor any police officers had interrogated Defendant by the time that he made the statements at issue. In fact, the record is unclear as to whether any federal agent or police officer ever interrogated Defendant.

Even assuming that the transport of Defendant to the Avon Lake Police Department somehow constituted a custodial interrogation, Defendant's additional claims regarding the early-morning arrest and amount of hours he had been awake are also without merit. Simply put, there is no evidence to support the assertion that those factors invalidated what otherwise appears to be a valid waiver of Defendant's rights. Thus, there is nothing to indicate that Defendant's waiver of his Miranda rights was not knowingly, intelligently, and/or voluntarily made or that any of the statements were elicited or coerced in violation of *Miranda*.

In sum, Defendant's Motion to Exclude from introduction at trial any post-arrest statements that he made to Special Agent Insana because of an alleged *Miranda* violation is **DENIED**. Again, the Court recognizes that it may later deem this evidence inadmissible at trial based on other evidence and testimony adduced on direct and cross-examination or on rebuttal.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| | ) | 2:11-cr-49 |
| v. | ) | |
| | ) | |
| JOSEPH E. GUMP, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 27th day of September, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANT'S MOTION TO EXCLUDE EVIDENCE GOVERNMENT INTENDS TO INTRODUCE AT TRIAL WITH CITATION TO AUTHORITY, filed at Doc. No. 64, is **DENIED**.

BY THE COURT:
s/ Terrence F. McVerry
United States District Court Judge

cc: **Leo M. Dillon, Esquire**
Email: Leo.Dillon@usdoj.gov

**Jay J. Finkelstein**
Email: jay_finkelstein@fd.org